1
2
3
4
5
6
7
8

**DENLEA & CARTON LLP**
James R. Denlea *(pro hac vice pending)*
Jeffrey I. Carton *(pro hac vice pending)*
Stan Sharovskiy *(pro hac vice pending)*
2 Westchester Park Drive, Suite 410
White Plains, New York 10604
Tel.: (914) 331-0100
Fax: (914) 331-0105
jdenlea@denleacarton.com
jcarton@denleacarton.com
ssharovskiy@denleacarton.com

9
10
11
12
13

**KUZYK LAW, LLP**
Michael D. Braun (SBN 167416)
2121 Avenue of the Stars, Ste. 800
Los Angeles, California 90067
Telephone:   (213) 401-4100
Facsimile:    (213) 401-0311
mdb@kuzykclassactions.com

14
15

*Counsel for Plaintiff*

16
17
18
19

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

20
21
22
23
24
25
26

**CONNER SAITMAN, on behalf of himself and all  others similarly situated,**

                    **Plaintiff,**

         **v.**

**TOUFAYAN BAKERIES, INC.,**

                    **Defendant.**

| |
|---|
| **CASE NO.: 5:23-cv-2439** |
| **CLASS ACTION COMPLAINT** |
| **DEMAND FOR JURY TRIAL** |

27
28

COMPLAINT

Plaintiff Conner Saitman, on behalf of himself and all others similarly situated ("Plaintiff"), by and through his undersigned counsel brings this class action against Defendant Toufayan Bakeries, Inc. ("Toufayan" or "Defendant") and on the basis of personal knowledge, information and belief, and the investigation of counsel, alleges as follows:

## PRELIMINARY STATEMENT

1.      This action seeks to redress the false, misleading, and deceptive advertising and packaging claims that Toufayan makes in connection with the sale of its wheat based bread products none of which contain even a fraction of the protein they prominently advertise to unsuspecting consumers on the front of their packaging.

2.      In an increasingly health-conscious market, unscrupulous food manufacturers hope to differentiate their products by deceptively marketing them as containing a significant amount of protein per serving.

3.      Seeking to exploit the market trend and to offer consumers more than just empty carbohydrates, Toufayan markets its *Smart Pockets* and *Keto* bread products as containing significant amounts of protein when, in fact, the products offer consumers only a fraction of the protein advertised in digestible form.

4.      Despite prominently advertising on the front label of its *Smart Pocket* products ("Original," "Carb – Whole Oats and Flax," "Everything," and "100% Whole Wheat") and *Keto* products ("Wraps," "Flat Bread," and "Pita") (collectively, the "Class Products")[1] that they contain a specific amount of protein, the nutritional panel on the

---

[1] All Class Products referenced in this Complaint make specific protein claims without disclosing the adjusted protein content in the nutritional fact panel, expressed as a percentage of daily value. However, upon information and belief, the products whose images are incorporated are the most prominent in the line of products that contain misleading protein claims, as well the products that purport to offer consumer the most amount of protein per serving.

back of the packaging for each product glaringly fails to disclose the daily value of protein that consumption of the product will actually provide:








5.    The Food and Drug Administration ("FDA") prohibits a manufacturer from advertising protein content on the front label of a food product *unless* the nutritional fact panel on the back label also discloses the amount of protein as a percentage of daily value. *See* 21 C.F.R. §§ 101.9(c)(7)(i), 101.13(b), (n).

6.    As California District Courts have recognized, "protein is essential for a healthy diet, and consumers often pick products based on their protein content … but

not all protein is created equal: ***protein quality matters just as much as quantity***." *See Rausch v. Flatout, Inc.*, 2023 U.S. Dist. LEXIS 39231, at \*2-3 (N.D. Cal. Mar. 8, 2023) (emphasis added).

7.    "When [protein is consumed, the body] breaks it down into its constituent parts—known as amino acids—and then uses those amino acids to make other proteins necessary for the body to function. To complete that process, the body must have access to nine different amino acids. If one amino acid is lacking, protein synthesis won't occur. High-quality proteins contain all nine amino acids in the right proportions for protein synthesis. A protein might additionally be lacking because it's not fully digestible. For instance … most plant proteins are only 85% digestible, so 15% of the protein from a plant source will just pass through your body." *Id*.

8.    "If a product makes a 'protein claim' anywhere … on its label—for instance, 'Excellent source of protein!' or even just '20g of protein'—the FDA requires the manufacturer to include additional information on the nutrition facts panel: The manufacturer can still list the grams of protein unadjusted for the protein's quality, but they must also include the 'corrected amount of protein per serving,' expressed as a percent of daily value." *Id* (citing § 101.9(c)(7)(i)).

9.    "The corrected amount of protein is the quantity of protein multiplied by the 'amino acid score' a discount factor that accounts for the protein's amino acid content and digestibility." *Id* (citing § 101.9(c)(7)(ii)). "That 'corrected amount' is then divided by 50g (the amount of protein that the FDA estimates adults should eat every day) to give … the percent daily value." *Id* (citing § 101.9(c)(7)(iii)).

10.    Here, as depicted above, Toufayan prominently emblazons its flat bread, wraps, and pita bread products with a very visible and unmistakable protein claim (i.e., "7g Protein" or "5g Protein") while omitting, as required, the adjusted daily value of protein on the nutritional panel on the back label.

11.    The average consumer mistakenly believes the protein in Toufayan's products is 100% digestible.  Specifically, the flat bread and pita bread, with "7g

Protein" would be believed to provide a consumer with 14% of their daily value of protein per serving. Under the same assumption, the wraps with "5g Protein" would be believed to provide a consumer with 10% of their daily value of protein.

12.    However, none of Toufayan's products contain 100% digestible protein. All three *Keto* products largely consist of whole wheat flour by weight. Whole wheat flour, the primary ingredient,[2] has an amino acid score of .53 and is widely understood to be a low quality protein.[3] Given that whole wheat is such a poor source of necessary amino acids needed for the body to re-assemble proteins after digestion, consumers that purchase these products are obtaining approximately half of the advertised protein per serving.

13.    To calculate the amount of protein actually contained in the *Keto* flat bread and *Keto* pita bread, 7g of protein must be multiplied by the whole wheat amino acid score of .53 and then divided by 50 (the recommended daily value of protein measured in grams). This would yield approximately 3.7 grams of protein. [4] For the *Keto* wraps, the products actually offer consumers approximately 2.7 g of protein per serving. [5]

---

[2] Ingredients on a nutritional fact panel are required by the FDA to be listed in descending order based on the predominance of weight, with whole wheat being the second product listed in each of three products, after water. (*see* https://www.fda.gov/food/food-additives-and-gras-ingredients-information-consumers/types-food-ingredients#:~:text=On%20a%20product%20label%2C%20the,by%20those%20in%20smaller%20amounts.

[3] https://www.2000kcal.cz/lang/en/values/wheat-flour-whole-grain-1382

[4] 7g x .53 (amino acid score) = 3.71. Then 3.71/50 (daily grams of protein). The quotient .0742 x 100 = 7.42%. Finally, 7.42% of 50 grams per day yields only **3.71 grams** of digestible protein.

[5] Likewise, 5g x .53 = 2.65; 2.65/50 = .053; .053 x 100 = 5.3%; 5.3% of 50 grams per day yields **2.65 grams** of adjusted protein.

14. Here, Toufayan deliberately conceals the adjusted daily value of protein from consumers in order to deceive them into believing that they are consuming more protein, and a more nutritious product, than they actually are. As a result, Plaintiff and the Class have commenced this action to redress Defendant's unlawful conduct.

## PARTIES

15. Plaintiff Conner Saitman is a resident of Wildomar, California.

16. Defendant Toufayan Bakeries, Inc., is a New Jersey corporation with its principal office address located at 175 Railroad Avenue, Ridgefield, New Jersey 07657.

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because (1) the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, and (2) the named Plaintiff and Defendant are citizens of different states. 28 U.S.C. § 1332(d)(2)(A).

18. The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as the parties are diverse and the amount in controversy exceeds the requisite threshold.

19. This Court may exercise jurisdiction over Defendant because Defendant has sufficient minimum contacts in California and purposely avails itself of the markets within California through the promotion, sale, marketing, and distribution of its products, thus rendering jurisdiction by this Court proper and necessary.

20. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred within this judicial district and because Defendant has marketed and sold the products at issue in this action within this judicial district and has done business within this judicial district.

**FACTUAL BACKGROUND**

21.    Defendant manufactures, distributes, markets, advertises, and sells a variety of food products under the brand name "Toufayan Bakeries." Specifically, Defendant's flat bread, wraps, and pita bread products are sold with packaging that predominantly, uniformly, and consistently states on the front product labels that the products contain a certain amount of protein per serving (i.e., "7g Protein" or "5g Protein").

22.    The representation that the Class Products contain and provide a specific amount of protein per serving when consumed was uniformly communicated to Plaintiffs and every other person who purchased any of the products in California. The same or substantially similar product label appears on each product, as seen below:



23.    In contravention of FDA regulations, the nutritional fact panel on the back of the Class Products uniformly and consistently omits the required corrected amount of protein per serving, expressed as a percentage of daily value:

**Keto Flat Bread**

**Nutrition Facts**

5 Servings Per Container
Serving Size                    1 Loaf (50g)

Amount Per Serving

**Calories**                          **140**

|  | % Daily Value* |
|---|---|
| Total Fat 4.5g | 6% |
| Saturated Fat 1g | 5% |
| Trans Fat 0g | |
| Cholesterol 0mg | 0% |
| Sodium 310mg | 13% |
| Total Carbohydrate 18g | 7% |
| Dietary Fiber 13g | 46% |
| Total Sugars 0g | |
| Includes 0g Added Sugars | 0% |
| Protein 7g | |

| Vit. D 0mcg 0% | • Calcium 80mg 6% |
| Iron 0.7mg 4% | • Potas. 30mg 0% |

* Percent Daily Values are based on a 2,000 calorie diet. Your daily values may be higher or lower depending on your calorie needs.

24.    Defendant's advertising and labeling of the Class Products as containing and providing a specific amount of protein, as depicted on the front label, is unlawful, misleading, and intended to induce consumers to purchase the products at a premium price, while unquestionably failing to provide the protein advertised in a digestible form.

25.    The front label of the Class Products is decidedly misleading since Defendant has failed to calculate the corrected amount of protein per serving based on the Class Products' amino acid score and because the corrected amount of protein as a percentage of daily value is not listed on the back of the products' nutritional fact panel.

26.     The Class Products' labeling is deceptive and misleading because reasonable consumers purchasing the products believe that a single serving will provide them with the specific grams of protein as advertised on the front label when, in fact, given the Class Products' low amino score (on account of whole wheat being a low quality source of protein), the amount of protein provided to consumers is approximately half of that which is advertised.

27.     Had Defendant properly followed FDA regulations by disclosing the corrected amount of protein per serving on the nutritional fact panel, Plaintiff and all members of the putative class would have known that the Class Products provided far less protein than claimed. Had Plaintiff and members of the class been provided with the corrected amount of protein per serving, they would not have purchased the products or, alternatively, would not have paid the premium charged.

I.      **The Demand for Protein Rich Foods Among Consumers**

28.     American consumers, now more than ever, are increasingly seeking healthy and affordable food options that include, among other necessary nutrients, reliable sources of protein.[6] Nearly a third of consumers studied in 2022 have stated that dietary protein has become more important to them.[7] Indeed, as Americans have returned to the office following the era of COVID-19 restrictions, the demand for time-saving, protein-rich meals has increased substantially.[8]

---

[6] https://www.foodnavigator-usa.com/News/Promotional-Features/The-Future-of-Protein-5-Key-Trends-for-2023#:~:text=The%20research%20shows%20that%20consumer,course%20of%20the%20last%20year.

[7] *Id*.

[8] *Id*.

29.    This shifting dietary emphasis toward high-protein low-carbohydrate foods has significantly impacted the bread industry.  Consumer aversion to empty carbohydrates, coupled with rising global wheat prices, has created a crisis in the bread industry.  As reported in Bloomberg:

> The nearly $50 billion US bread industry was already facing the threat of shifting consumer tastes, thanks to the increasing popularity of gluten-free diets, according to research IBISWorld.  Now there are worries that these price hikes help usher in another boom in carb cutting like the South Beach Diet craze of the early aughts.  Meanwhile, restaurants may offer less free table bread or slash portions.  The price for a pound of white bread in the US hit a record $1.69 in June, a 12% jump from a year earlier.  Meanwhile, wheat bread also hit an all-time high of $2.22 a pound.[9]

30.    Accordingly, rebranding products like bread, to claim that they contain benefits which they do not, like high protein, has become an existential priority.

31.    Additionally in the global market, there is a marked shift in demand among consumers from animal proteins to plant-based protein alternatives, including baked goods and breads.[10,11]  Naturally, food manufacturers seeking to exploit the growing trend are increasingly marketing their bread products as being rich in protein, in addition to containing other essential nutrients.[12]

---

[9] https://www.bloomberg.com/news/articles/2022-07-18/inflation-2022-rising-food-prices-has-sticker-shocked-america-changing-diet?leadSource=uverif...

[10] https://www.bakingbusiness.com/articles/57407-plant-proteins-grow-in-popularity-options-for-bakers

[11] https://www.mdpi.com/2304-8158/11/9/1185

[12] https://www.shape.com/healthy-eating/diet-tips/high-protein-bread

32.     Unfortunately, in seeking to rebrand their otherwise ordinary offerings as a "health" food, manufacturers often skirt the law by making false claims about the protein content in their products and by deliberately failing to disclose to consumers that protein digestibility varies immensely depending on the *source* of that protein.[13]

33.     With protein content being ranked as second only to taste in the eyes of the average consumer, unscrupulous food manufacturers understand that marketing their products as being rich in protein, even if they are not, is an easy way to increase sales.[14] This leaves consumers in the dark because, despite the ubiquity of advertisements and claims that products contain a specific amount of protein per serving, many manufacturers hide the fact that their "raw" protein numbers (i.e., the protein in the product prior to consumption) are essentially meaningless since the human body's process of digestion and protein synthesis yields a net protein quantity that is often but a fraction of the advertised figures.

## II.     The Process of Protein Synthesis

34.     Amino acids are molecules that are used by the human body to synthesize proteins necessary to maintain normal bodily functioning.[15] Nine of these amino acids are called "essential amino acids," and must be obtained from food consumption as the human body cannot produce them on its own (i.e., histidine, isoleucine, leucine, lysine, methionine, phenylalanine, threonine, tryptophan, and valine).[16]

---

[13] https://truthinadvertising.org/articles/catrends-false-and-misleading-protein-claims/

[14] *Id.*

[15] https://my.clevelandclinic.org/health/articles/22243-amino-acids

[16] *Id.*

35.    A healthy balance of such amino acids is needed for the human body to grow and repair body tissue, make hormones and neurotransmitters, maintain the structure of skin, hair, and nails, build muscle, bolster the immune system, and sustain the digestive system.[17]

36.    The best source of the essential amino acids are animal proteins such as beef, poultry, eggs, as well as plant-based proteins such as soy, quinoa, and buckwheat.[18]

37.    Whole wheat, which is the primary ingredient in the Class Products at issue, is a "low quality protein" on account of its limited levels of *lysine* (approximately half of the amount that the Food and Agriculture Organization ("FAO") recommends).[19] Notably, lysine is necessary for proper calcium absorption and the formation of collagen required for the maintenance and repair of skin, tendons, cartilage, and bones.[20]

38.    As a direct consequence of its relative lack of digestibility, whole wheat has an amino acid score of .53, which means that only approximately half of the amino acids in a whole wheat bread product are absorbed and resynthesized by the human body into usable proteins.[21]

39.    Accordingly, Defendant's reliance upon whole wheat as the primary source of protein in the Class Products means that in order for its "7g Protein" (14% of

---

[17] *Id.*

[18] *Id.*

[19] https://www.2000kcal.cz/lang/en/values/wheat-flour-whole-grain-1382

[20] https://www.mountsinai.org/health-library/supplement/lysine#:~:text=Lysine%20appears%20to%20help%20the,enough%20lysine%20in%20their%20diet.

[21] https://www.2000kcal.cz/lang/en/values/wheat-flour-whole-grain-1382

daily value) and "5g Protein" (10% of daily value) claims to be accurate – that is, for consumers to be able to absorb sufficient amino acids to synthesize that much protein – the unadjusted, raw number of protein in the products would have to be approximately 14g and 10g, respectively (that is, roughly double the advertised amount). Instead, consumers are actually obtaining approximately 2.7 to 3.7g of usable protein; that is, nearly one half of the advertised amount.

### III.  Defendant's Marketing of the Class Products is False and Misleading Under California Law

40.     District Courts in California have recognized that, in accordance with FDA regulations, "that when a manufacturer emphasizes a product's protein content, that statement is misleading without including information about the product's protein quality on the nutrition facts panel." *See Rausch.*, 2023 U.S. Dist. LEXIS 39231, at *12-13; *see also Lesh v. D's Nautrals, LLC*, 2023 U.S. Dist. LEXIS 43881, at *13-14 (N.D. Cal. Mar. 15, 2023); *Brown v. Nature's Path Foods, Inc.*, 2023 U.S. Dist. LEXIS 54318, at *16 (N.D. Cal. Mar 29, 2023).

41.     Indeed, California's Sherman Food Drug & Cosmetic Law (the "Sherman Law") expressly adopts and mirrors federal regulations regarding the labeling of products that make protein content claims, thereby providing an independent state basis rendering Defendant's conduct deceptive and misleading.

42.     Reasonable consumers, such as Plaintiffs and the members of the putative class, would expect that when Defendant labels the Class Products as containing "5g Protein" or "7g Protein" per serving, the products would provide them with that much usable protein when consumed. This is not the case. Instead, consumers are provided with products that yield approximately half of the advertised protein when consumed, thus rendering the prominent advertising on the front of the Class Products' packaging materially misleading.

43.    Moreover, the average consumer lacks the sophistication, knowledge, and ability to independently ascertain the truthfulness of Defendant's advertising claims at the point of sale. Reasonable consumers have no reason to believe that the amount of protein per serving on the front label of Defendant's Class Products is not corrected or adjusted for the source protein's amino acid scores or digestibility.

44.    Likewise, the average reasonable consumer lacks the scientific foundation to calculate the true amount of protein in the Class Products and does not have the specialized knowledge required to perform such an adjusted value calculation. As such, reasonable consumers, including Plaintiff and members of the putative class, had no choice but to rely upon Defendant's false and misleading representations as to protein content.

45.    By deliberately omitting the adjusted daily value for protein consumption on the nutritional fact panel, while prominently making protein claims on the front, Defendant intended to, and did, mislead consumers into believing that the Class Products contain significantly more protein than they do and, thus, deceived consumers into believing they were purchasing food products that were more nutritious and healthier than other alternatives.

46.    Defendant intended and knew that consumers would rely upon its false product labeling statements in making their purchasing decisions, especially where, as here, the protein claims were prominently placed on the front label of each of the Class Products.

47.    By falsely labeling the Class Products with misleading protein claims, Defendant is stating that the products are superior, more nutritious, and healthier than other comparable products that do not make any protein claims or those that properly make protein claims by disclosing the corrected amount of usable protein expressed as a percentage of daily value. Defendant knew and intended that consumers, relying on its false representations, would purchase the Class Products and/or pay a premium for them.

## IV.    **Plaintiff Purchased the Class Products**

48.    Plaintiff Conner Saitman purchased Defendant's *Keto* Flat Bread at a Walmart Supercenter located at 29260 Central Ave, Lake Elsinore, California.

49.    Prior to purchasing the products, Plaintiff reviewed the front product label on the Flat Bread which stated that the products contained "7g Protein" per serving.

50.    Relying on the representation on the front label, Plaintiff purchased the products believing that consuming them would yield 7g of usable protein.

51.    In making food product purchases for the first time, Plaintiff also regularly checks the nutritional fact panel on the back of the product packaging, including the percentage of daily value of protein (when available), and uses that information as basis to draw comparisons among similar products.

52.    When purchasing the *Keto* Flat Bread for the first time, Plaintiff reviewed the nutritional fact panel on the back of the packaging and, due to the fact that a corrected daily value of protein was not disclosed, Plaintiff had no choice but to rely upon the representation that the products contained 7g of protein, as advertised on the front label, and understood that to mean that the disclosed protein was in a usable form.

53.    Plaintiff did not have any reason to believe that any of the Class Products provided less protein than the amount indicated on the front label. Plaintiff did not have the knowledge or the ability to independently calculate the corrected amount of the protein in the Protein Product prior to purchase.

54.    Had Defendant disclosed the corrected amount of protein per serving for the lavash and pita bread products, expressed as a percentage of daily value on the nutritional fact panel on the back of the packaging, Plaintiff would not have purchased the products or would have, at a minimum, paid less for them.

55.    As a result, Plaintiff and the class have been economically damaged by their purchase of Defendant's products (i.e., the Class Products) as a result of its false and misleading advertising.

## CLASS ALLEGATIONS

56.    Plaintiff bring this class action on behalf of himself and a proposed class of similarly situated persons, pursuant to Fed. R. Civ. P. 23 and seeks certification of the follow class ("the Class"):

> All consumers who, within the applicable statute of limitations period, purchased in the State of California (whether online or in-person) Toufayan's products advertised on the front label as containing a specific amount of protein per serving while excluding a corrected amount of protein, as a percentage of daily value, on the nutritional fact panel (the "Class Products"). Excluded from the class are Defendant, its parents, subsidiaries, affiliates, officers and directors, judicial officers and their immediate family members and associated court staff assigned to this case, and those who purchased the Class Products for resale.

57.    **Numerosity**. This action is appropriately suited for a class action. The members of the Class are so numerous that joinder of all members of the Class is impracticable. Plaintiff is informed, believes, and thereon alleges that the proposed Class contains thousands of purchasers of the Class Product who have been damaged by Defendant's conduct as alleged herein. The precise number of Class members is unknown to Plaintiff.

58.    **Existence and Predominance of Common Questions of Law and Fact**. This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

a.    Whether Defendant's conduct, as alleged herein, constitutes a violation of the "Unlawful" Prong of UCL Cal. Bus. & Prof. Code § 17200, *et. seq.*;

b.    Whether Defendant labeled, advertised, marketed, and/or sold the Class Products with specific protein content claims on the front label while failing to disclose the corrected amount of protein, expressed as a percentage of daily value, on the back nutritional fact panel;

c. Whether Defendant's labeling, advertising, marketing, and/or selling of the Class Products was and/or is false, fraudulent, deceptive, and/or misleading;

d. Whether representations regarding the number of grams of protein in the Class Products are material to a reasonable consumer;

e. Whether Class members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages, plus interest thereon and, if so, the nature and scope of such relief.

59.     **Typicality**. Plaintiff's claims are typical of the claims of the members of the Class, because, *inter alia*, all Class members have been injured through the uniform misconduct described above and were subject to Defendant's blatant misrepresentations that the Class Products offered consumers far more usable protein per serving than they actually did.

60.     Moreover, Plaintiff's claims are typical of the Class members' claims. Plaintiff is advancing the same claims and legal theories on behalf of himself and all members of the Class.

61.     **Adequacy of Representation**.  Plaintiff will fairly and adequately protect the interests of the members of the Class.  Plaintiff purchased the Class Products, and was harmed by Defendant's deceptive misrepresentations.   Plaintiff has therefore suffered an injury in fact as a result of Defendant's conduct, as did all Class members who purchased the Class Products. Plaintiff has retained counsel who are adept, sophisticated, and experienced in the field of class action litigation, and have adequate resources to advocate on behalf of the class fully and zealously.

62.     **Superiority**.  A class action is superior to other methods for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant.  It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs done to him or her.  Further, even if the Class members could afford such individualized litigation, the court system could not.

Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

63.    Plaintiff seeks monetary damages, including statutory damages on behalf of the entire Class, and other equitable relief on grounds generally applicable to the entire Class. Unless a Class is certified, Defendant will be allowed to profit from its deceptive practices, while Plaintiff and the members of the Class will have suffered damages.

## COUNT I

### Violation of the Consumer Legal Remedies Act ("CLRA")
### Cal. Civ. Code § 1750, *et. seq.*

64.    Plaintiff hereby incorporates by reference the allegations contained in Paragraphs 1 through 63 as though fully set forth herein.

65.    At all relevant times, Plaintiff was a "consumer" as defined by Cal. Civ. Code § 1761(d).

66.    At all relevant times, the Products were "goods" as defined by Cal. Civ. Code § 1761(a).

67.    At all relevant times, Defendant was a "person" as defined by Cal. Civ. Code § 1761(c).

68.    Cal. Civ. Code § 1770(a) prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer[.]"

69.    Plaintiff and members of the class are reasonable consumers who expected the Products to have the characteristics as represented.

70.    As a result of Defendant's conduct and unfair or deceptive acts or practices, Plaintiff Clugston and the class suffered actual damages in that the Products are not as advertised and are not worth the amount paid, and Defendant has deprived Plaintiff and the class of the benefit of their bargain.

71.    Pursuant to Cal. Civ. Code § 1782, Plaintiff notified Defendant in writing by certified mail in conjunction with the filing of this Complaint of its violations of § 1770 described above and demanded that it correct the problems associated with the actions detailed above and give notice to all affected consumer of Defendant's intent to do so. If Defendant does not agree to rectify the problems identified and give notice to all affected consumers within 30 days of the date of written notice, Plaintiff will amend this Complaint to seek actual, punitive and statutory damages, as appropriate.

## COUNT II

### Violation of the False Advertising Law ("FAL")
### Cal. Bus. & Prof. Code § 17500, *et seq*.

72.    Plaintiff hereby incorporates by reference the allegations contained in Paragraphs 1 through 63 as though fully set forth herein.

73.    Defendant made untrue, false, deceptive, and/or misleading statements in connection with the advertising and marketing of the Class Products.

74.    Defendant made representations and statements that led reasonable consumers to believe that the Class Products they were purchasing contained more grams of protein per serving than they actually provided when consumed. Defendant had a duty under California and federal law to disclose the corrected amount of protein per serving in the nutritional fact panel since it had made a protein claim on the front label of the Class Products.

75.    Plaintiff and the Class members relied to their detriment upon Defendant's false, misleading, and deceptive advertising and marketing practices. Had Plaintiff and the members of the Class been adequately informed and not intentionally deceived by Defendant, they would have refrained from purchasing the Class Products or paid less for them.

76.    Defendant's acts and omissions are likely to deceive the general public.

77.    Defendant engaged in these false, misleading, and deceptive advertising practices to increase its profits. Accordingly, Defendant has engaged in false advertising, as defined and prohibited by Section 17500, *et seq*. of the California Business and Professions Code.

78.    As a direct and proximate result of such actions, Plaintiffs and the Class are entitled to full restitution of all monies acquired by Defendant as a result of its false, misleading, and deceptive advertising practices.

## **COUNT III**

### **Violation of the Unfair Competition Law ("UCL") Cal. Bus. & Prof. Code § 17200, *et seq*.**

79.    Plaintiff hereby incorporates by reference the allegations contained in Paragraphs 1 through 63 as though fully set forth herein.

80.    California's Unfair Competition Law ("UCL") defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200.

81.    A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

82.    Defendant has violated the unlawful prong by virtue of its violations of the Sherman Food Drug & Cosmetic Law by failing to disclose the corrected amount of

protein per serving in the Class Products. *See* Cal. Health and Saf. Code. Ch. 5. Art. 6, § 110660 ("Any food is misbranded if its labeling is false or misleading in any particular.")

83.    As a result of the conduct described above, Defendant has been unjustly enriched at the expense of Plaintiff and the members of the Class. Specifically, Defendant has been unjustly enriched by obtaining revenues and profits that it would not otherwise have obtained absent its false, misleading, and deceptive conduct. Additionally, Plaintiff and the Class seek restitution if monetary damages are not available.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment against Defendant as follows:

A.    Certifying this action as a class action as soon as practicable, with the Class as defined above, designating Plaintiff as the named Class representative, and designating the undersigned as Class Counsel.

B.    An order requiring Defendant to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, or untrue or misleading advertising, plus pre-and post-judgement interest thereon;

C.    Awarding Plaintiff and the Class such other and further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all causes of action or issues so triable.

DATED: November 30, 2023                    Respectfully submitted,

Michael D. Braun
**KUZYK LAW, LLP**
2121 Avenue of the Stars, Ste. 800
Los Angeles, California 90067
Tel: (213) 401-4100
Fax: (213) 401-0311
mdb@kuzykclassactions.com

**DENLEA & CARTON LLP**
James R. Denlea *(pro hac vice pending)*
Jeffrey I. Carton *(pro hac vice pending)*
Stan Sharovskiy *(pro hac vice pending)*
2 Westchester Park Drive, Suite 410
White Plains, New York 10604
Tel.: (914) 331-0100
Fax: (914) 331-0105
jdenlea@denleacarton.com
jcarton@denleacarton.com
ssharovskiy@denleacarton.com

*Counsel for Plaintiff*